UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ANTHONY ALSTON, JR., <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF SACRAMENTO, et al., <br><br> Defendants. | No. 2:18-cv-02420 TLN CKD (PS) <br><br><br> FINDINGS AND RECOMMENDATIONS |

Plaintiff, a Sacramento resident, commenced this action in September 2018 and paid the filing fee. (ECF No. 1.) Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and state law against the County of Sacramento; Sheriff Scott Jones; Captain Eric Buehler, administrator of the county jail; Sergeant Connor Milligan, also a jail official; and six sheriff's deputies.[1]

---

[1] In September 2018, the district judge assigned to this action related it to No. 2:18-cv-01041 TLN CKD, Alston v. County of Sacramento ("Alston I"), as both actions

> involve the same plaintiff and have County of Sacramento as one of the defendants, both are based on similar questions of fact which arose during Plaintiff's time in custody with the Sacramento County Sheriff's Department from November 21, 2017 to November 22, 2017, and both involve substantially similar questions of law[.]

(ECF No. 14.) Alston I, which concerned plaintiff's medical care at the jail, was filed in April 2018. In September 2018, plaintiff's § 1983 claims were dismissed with prejudice and his

1

On January 30, 2019, the undersigned held a hearing on defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). Plaintiff appeared pro se, and Jill Nathan appeared on behalf of defendants. At the close of the hearing, the court took the matter under submission.

I. The Complaint

Plaintiff alleges that on November 20, 2017, he had "just had ankle surgery and was in a walking boot" when his wife assaulted and pepper sprayed him in the course of an argument. (ECF No. 1, ¶ 16.) Plaintiff called the police, and defendant Iniguez arrived, spoke to plaintiff and his wife, and made no arrests. (Id., ¶ 17.) Plaintiff claims Iniguez "breached his duty to enforce the law" by failing to protect him from his wife. (Id., ¶ 18.)

The next day, defendants Ball and Madriago were called to plaintiff's house about a domestic incident and arrested plaintiff. (Id., ¶¶ 21-22.) When plaintiff asked why they weren't arresting his wife, Madriago allegedly told him: "Well, you're bigger and you're a male and that's what it looks like so you're going to jail." (Id., ¶ 22.) Plaintiff contends that defendants should have arrested his wife for breaking the door to his house. (Id., ¶¶ 20-23.)

While getting into the patrol car, plaintiff fell and hurt his knee. (Id., ¶ 24.) Defendants drove plaintiff to the hospital. On the way, Ball allegedly braked hard, causing plaintiff, who was not buckled in, to hit his head. (Id., ¶26.) At the hospital, plaintiff told Ball "that I needed to call my mother so she can bring my knee brace," but Ball allegedly refused. (Id.)

When plaintiff arrived at the jail, Ball took his wrist brace, and defendant Lloyd "without provocation choke slams me out my wheelchair while I'm handcuffed onto the ground." (Id., ¶ 27.) Plaintiff was placed in segregation and not allowed to go over his property or use the phone. After "multiple hours," he was transported to the medical unit in a wheelchair. (Id.) Plaintiff asked defendants Milligan and Rivera for his knee brace but did not receive it, and deputies took away his wheelchair. (Id., ¶ 28.) Although plaintiff was booked into the jail on the evening of

---

remaining state law claims were dismissed without prejudice. (Alston I, ECF No. 23.) Defendants note that plaintiff's remaining state law claims against the medical providers at the jail are being litigated in state court. (ECF No. 15-1 at 7, n.1.) Plaintiff mentions another federal case, 2:13-cv-01488 KJM DB P (E.D. Cal.), concerning medical issues, which settled in 2017. (ECF No. 1, ¶ 5.)

November 21, 2017, he did not make a phone call until the following afternoon. (Id., ¶ 29.)

On November 22, 2017, plaintiff fell and lay on the ground for over thirty minutes until non-defendant deputies saw him and provided a wheelchair. (Id., ¶ 30.) He bailed out of jail that afternoon. (Id.) Two days later, doctors determined that plaintiff suffered a concussion. (Id., ¶ 31.) On November 28, 2017, all criminal charges against plaintiff were dropped. (Id., ¶ 32.)

Based on these events, plaintiff asserts twelve causes of action: (1) violation of the equal protection clause; (2) violation of procedural due process; (3) Monell claim against the County of Sacramento; (4) Fourth Amendment violation – arrest without probable cause; (5) Fourth Amendment violation – excessive force; (6) violation of California's Bane Act; (7) deliberate indifference to serious medical needs; (8) violation of the Americans with Disabilities Act; (9) violation of California's Unruh Act; (10) battery; (11) failure to adequately train and supervise; and (12) negligence.

II. Legal Standards

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and construe the complaint in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In ruling on a motion to dismiss, the court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider "documents whose contents are alleged in a complaint and whose

authenticity no party questions, but which are not physically attached to the pleading[.]" Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Gailbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002); see also Steckman v. Hart Brewing Co., Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (on Rule 12(b)(6) motion, court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.") The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).

III. Analysis

A. § 1983

1. County of Sacramento

The County of Sacramento is named as a defendant in plaintiff's § 1983 allegations in the First (equal protection), Second (due process), Third (Monell), and Seventh (deliberate indifference) causes of action.

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Municipalities and other local government units ... [are] among those persons to whom § 1983 applies." Monell v. Dept. of Soc. Servs., 436 U.S. at 690. However, a municipal entity or its departments is liable under § 1983 only if plaintiff shows that his constitutional injury was caused by employees acting pursuant to the municipality's policy or custom. See Villegas v. Gilroy Garlic Festival Association, 541 F.3d 950, 964 (9th Cir. 2008) (citing Monell, 436 U.S. at 690–94). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Board of County Comm'rs. of

Bryan County v. Brown, 520 U.S. 397, 404 (1997). Plaintiff has not alleged that any employee of the Sheriff's Department acted pursuant to a policy or custom that violated his federal constitutional rights as to, respectively, equal protection, procedural due process, or medical care. Aside from conclusory allegations, there are no detailed allegations of any county policy, practice, or custom resulting in constitutional injury to plaintiff. Thus, plaintiff fails to state a § 1983 claim against the County of Sacramento.

### 2. Defendants Jones, Buehler, and Milligan

Defendants Jones, Buehler, and Milligan are Sacramento County officials with supervisory roles at the county jail. (ECF No. 1, ¶¶ 10-12.) Plaintiff names one or more of them as § 1983 defendants in Claim 2 (due process), Claim 5 (excessive force), and Claim 7 (deliberate indifference). Supervisory personnel are generally not liable under §1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979). A defendant may be held liable as a supervisor under § 1983 if there exists "either (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). A supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates may establish supervisory liability. Starr, 652 F.3d at 1208. However, allegations do not state a cause of action against a supervisory defendant where "there is no allegation of a *specific* policy implemented by the Defendant[] or a *specific* event or events instigated by the Defendant[] that led to" the purportedly unconstitutional conduct. Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012) (emphasis in original).

Here, plaintiff does not allege a causal link between any of the supervisory defendants and a constitutional violation. Defendants Jones and Buehler are not alleged to have participated in any of the events recounted in the complaint. As to defendant Milligan, plaintiff alleges that he ignored plaintiff's questions and requests after plaintiff arrived at the jail. (Id., ¶¶ 27-28.) As this

does not rise to the level of a constitutional claim, plaintiff fails to state a § 1983 claim against any of the supervisory defendants.

### 3. Defendants Iniguez, Ball, and Madriago

As noted above, plaintiff alleges that defendant Iniguez responded to a call at plaintiff's house on November 20, 2017. Iniguez spoke to plaintiff and his wife, told plaintiff he could not determine whether a crime had been committed, told plaintiff's wife to leave, and left without making an arrest. (Id., ¶¶ 16-18.) Defendants Ball and Madriago arrested plaintiff the next day; he fell while trying to enter the patrol car and hurt his knee. (Id., ¶ 24.) Ball and Madriago transported plaintiff to Kaiser hospital, where he was treated with a wrist brace and ibuprofen, and then to the county jail. (Id., ¶ 26, 27.) Plaintiff alleges that Ball drove in such a way that he hit his head inside the vehicle; that she refused his request to call his mother; and that at the jail she took away his wrist brace. (Id., ¶¶ 26-27.) The complaint indicates that plaintiff was transported to the jail booking area in a wheelchair, and that he was seen in the medical unit within hours of being booked. (Id., ¶¶ 27-28.)

Plaintiff asserts the following § 1983 claims against defendants Iniguez, Ball, and/or Madriago: Claim 1 (equal protection), Claim 2 (due process), Claim 4 (Fourth Amendment – arrest without probable cause), and Claim 7 (deliberate indifference). First, plaintiff's assertion that Iniguez "breached his duty to enforce the law" does not approach a constitutional violation, and the complaint does not state a § 1983 claim against this defendant. See Cal. Gov. Code § 845 ("Neither a public entity nor a public employee is liable for failure to . . . provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.").

Plaintiff asserts that Ball and Madriago violated his right to equal protection when they arrested him on November 21, 2017. See Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) ("To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.") However, defendants' arrest of plaintiff rather than his wife, coupled with Madriago's comment that plaintiff was "bigger" and "male," are not

sufficient to state a federal equal protection claim. Plaintiff was arrested for a violation of California Penal Code § 273.5, corporal injury to a spouse or cohabitant. (ECF No. 1 at 27.) Plaintiff does not describe his own role in the dispute between him and his wife, except to say that "she begins to swing and hit me so I defend myself . . . stopping her from going inside the kitchen to get a knife." (ECF No. 1, ¶ 20.) Under state domestic violence law, officers are required to "make reasonable efforts to identify the dominant aggressor in any incident. The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor." Cal. Penal Code § 13701(b). Here, the totality of the alleged circumstances do not suggest that defendants arrested plaintiff due to intentional discrimination based on gender. Moreover, "[i]f the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it." Tatum v. City and County of S.F., 441 F.3d 1090, 1094 (9th Cir. 2006); see also Travis v. City of Roseville Police Dept., 2015 WL 5896022, *5 (E.D. Cal. Oct. 6, 2015) (probable cause standard depends on the totality of the circumstances; "[i]t does not matter whether the suspect is later proved innocent.") (citations omitted). Nor do plaintiff's allegations suffice to show that he was arrested without probable cause in violation of the Fourth Amendment, as he asserts in Claim 4. See Cal. Penal Code § 836(d)(1)-(2) (probable cause for domestic violence arrest).

In Claim 2, plaintiff asserts that defendants violated his federal due process rights by not allowing him to use the phone within three hours of booking in violation of California Penal Code § 851.5. The statute requires that an arrestee be allowed telephone access within three hours of arrest to contact an attorney, a bail bondsman, or a relative or other person. In Carlo v. Chino, 105 F.3d 493, 497 (9th Cir. 1997), the Ninth Circuit held that § 851.5 created a liberty interest with procedural due process protection under the Fourteenth Amendment. "[T]he statute substantively limits an officer's discretion because it makes a telephone call mandatory unless physically impossible." Id. at 499, citing § 851.5(a). The Carlo court held that, by holding a California arrestee "incommunicado" for 14 hours despite her requests to use the phone, the jail's watch commander violated her due process rights. Id. at 500.

////

Plaintiff's exhibits show that he was booked at 7:46 p.m. on November 21, 2017 and did not place a phone call until November 22 at 1:44 p.m. (ECF No. 1 at 27-30.) He alleges that "[t]his was the only time they allowed me to use the phone[.]" (Id., ¶ 29.) Plaintiff alleges that, at the hospital prior to booking, defendant Ball denied his request to use the phone in the emergency room, and that later at the jail, he told defendant Milligan he was legally entitled to use the phone and threatened to sue. (Id., ¶¶ 26, 28.) These vague allegations are not enough to show that plaintiff was held "incommunicado" for a specific period of time or causally link any defendant to a constitutional violation. Moreover, plaintiff has submitted an "Exhibit C" consisting of notes from Correctional Health Services on November 21 and 22, 2017. (ECF No. 16 at 28.) These notes appear to contradict plaintiff's claim that he was not allowed to call his mother for his knee brace, as they indicate he "doesn't know her phone number or any other person who could contact her." (Id.)

In Claim 7, plaintiff asserts that defendants were deliberately indifferent to his serious medical needs by ignoring his requests for orthopedic appliances such as a knee brace, orthopedic insoles, and wrist brace. (Id., ¶ 59.) Plaintiff contends that county employees should have known of his need for these items from a prior lawsuit in which plaintiff received a settlement. (Id.)

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id. In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096. First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Id. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v.

Brennan, 511 U.S. 825, 837 (1994). Here, the complaint does not specify how any defendant was deliberately indifferent to plaintiff's serious medical needs under this standard. Plaintiff was examined and given a wrist brace at Kaiser hospital prior to being taken to jail, transported to jail in a wheelchair, searched upon arrival at the jail, and seen by jail medical staff within several hours of being booked. (ECF No. 1, ¶¶ 26-27.) See Cal. Penal Code § 2656(b) (if inmate's orthopedic appliance is removed for security reasons, inmate "shall be examined by a physician within 24 hours after such removal").

### 4. Defendants Trummel, Lloyd, Rivera, Iniguez, and Milligan

In Claim 5, plaintiff asserts that defendants Trummel, Lloyd, Rivera, Iniguez, and Milligan committed unconstitutional excessive force against him, with some defendants failing to intervene. (ECF No. 1, ¶ 50.) In the body of the complaint, plaintiff alleges:

> They bring me a Wheelchair, take me into the booking area and without provocation Defendant Lloyd choke slams me out my wheelchair while I'm handcuffed to the ground . . . and I ask him why did he do that while I'm on the ground, than [sic] I look at Defendant Milligan and ask him what that was for, but he doesn't answer back, and at this point I inform officials that I need my knee brace and I'm hurt multiple times moreover multiple deputies are there but do not intervene[.] Furthermore, Defendants Does including Defendants Trummel use excessive force than carry me to segregation cell[.]

Id., ¶ 27. Plaintiff also alleges that defendant Rivera later "attempt[ed]" to "throw him out" of his wheelchair and was present when unnamed defendants who did so. (Id., ¶ 28.) Plaintiff alleges that, three days later, he was diagnosed with a concussion. (Id.., ¶ 31.)

Determining whether an officer's use of force against an arrestee is reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989). "Not every push or shove . . . violates the Fourth Amendment." Id. (internal quotations and citations omitted). Viewing the allegations in the light most favorably to plaintiff, the complaint states an excessive force claim against defendant Lloyd. Plaintiff's allegations against the remaining defendants are vague, conclusory, or otherwise insufficient to state an

excessive force claim. See Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (while the court must assume plaintiff's factual allegations are true, it is not required to accept allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

In sum, plaintiff states a § 1983 claim against Lloyd, but no other defendant.

### B. ADA

In Claim 8, plaintiff asserts that the County of Sacramento and five individual defendants violated his rights under the ADA by failing to accommodate his need for orthopedic appliances in jail. Apparently referring to an earlier lawsuit, he asserts that "it is well established in defendants' records" that he has a flat foot and a hole in his knee and requires these devices. (ECF No. 1, ¶ 64.)

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (ADA), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). Plaintiff does not allege he was excluded or discriminated against by reason of a disability, and thus fails to state a claim under the ADA.

### C. State Claims

#### 1. Bane Act

In Claim 6, plaintiff asserts state Bane Act claims against Trummel, Lloyd, Iniguez, Rivera, and Milligan. See Cal. Civil Code § 52.1 (the "Bane Act"). The relevant portion of the Bane Act authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats,

intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." Sahymus v. Tulare County, 2015 WL 3466942, *6 (E.D. Cal. June 1, 2015) citing Jones v. Kmart Corp., 17 Cal.4th 329, 331 (1998). To prove a Bane Act violation, a plaintiff must show that a defendant attempted to, or did, "prevent the plaintiff from doing something that he had the right to do under the law, or to force plaintiff to do something that he was not required to do under the law." Id., citing Austin B. v. Escondido Union Sch. Dist., 149 Cal.App.4th 860, 883 (2007). "Speech alone is not sufficient to support a [Bane Act claim] except upon a showing that the speech itself threatens violence ... and the person ... against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence has the apparent ability to carry out the threat." Id., citing Cal. Civ. Code § 52.1(j). Here, while plaintiff states an excessive force claim against Lloyd as discussed above, no specific factual allegations connect the remaining defendants to a "threat, intimidation, or coercion" or the use of excessive force. Thus the complaint states a Bane Act claim against Lloyd only.

2. Unruh Act

In Claim 9, plaintiff asserts claims under the Unruh Act. See Cal. Civil Code § 51. The statute prohibits discriminatory activity in "business establishments." Id. "To prevail on [a] disability discrimination claim under the Unruh Civil Rights Act, [a] plaintiff must establish that (1) he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) his disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm." Sahymus, 2015 WL 3466942, *8 (citations omitted). California district courts have held that the Unruh Act does not apply to county jails as they are not considered "business establishments." Id. (collecting cases). Thus plaintiff does not state an Unruh Act claim based on his alleged treatment at the jail.

////

////

### 3. Battery

In Claim 10, plaintiff asserts a battery claim against the County of Sacramento and defendants Lloyd, Trummel, Rivera, and Milligan. Under state law, the elements of civil battery are (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff. Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-527 (2009) (citation omitted). "A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable." Id. at 527. Based on the alleged incident in which defendant Lloyd "choke slam[med]" plaintiff out of his wheel chair and onto the ground while plaintiff was handcuffed (ECF No. 1, ¶ 27), the complaint states a battery claim against Lloyd but no other defendant.

### 4. Failure to Train

In Claim 11, plaintiff seeks to hold the County of Sacramento liable for failing to adequately train and supervise its employees. In conclusory fashion, plaintiff cites "excessive force, denial of phones, orthopedic appliance, false arrest, knowledge of laws, and reasonable accommodations" as ways in which county defendants violated his civil rights. As discussed with regard to plaintiff's § 1983 claims, these allegations are too vague and conclusory to state a claim.

### 5. Negligence

In Claim 12, plaintiff asserts that all defendants were negligent. See Evan F. v. Hughston United Methodist Church, 8 Cal. App. 4th 828, 834 (1992) (elements of negligence are "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury") (citation omitted). Plaintiff alleges in conclusory terms that defendants breached their duty of care in transporting him to the jail, using force against him, not letting him use the phone, and not giving him his orthopedic appliances. Plaintiff does not allege the elements of negligence against any defendant, and his allegations are too vague and conclusory to state a claim.

////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 15) be partially granted and partially denied, as follows:

2. The claims in this action be dismissed as to all defendants with prejudice, except as to defendant Lloyd; and

3. Upon dismissal of all other claims, defendant Lloyd be directed to answer claims of § 1983 excessive force (Claim 5), Bane Act violation (Claim 6), and battery (Claim 10) within sixty days.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 7, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / alston2420.mtd_fr