UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ANTHONY ALSTON, JR., | No. 2:18-cv-02420-TLN-CKD (PS) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COUNTY OF SACRAMENTO, ET AL., | AND ORDER |
| Defendants. | |

Pro se plaintiff, Eric A. Alston, Jr., commenced this civil rights action on September 4, 2018 against the County of Sacramento, Sheriff Scott Jones, Captain Eric Buehler, Sergeant Connor Milligan, the administrator of the county jail, and six sheriff's deputies. (ECF No. 1.) The complaint asserted twelve causes of action. The court dismissed all causes of action except three, and all defendants except one, for failure to state a claim. (ECF No. 20.) The one remaining defendant, Deputy Kenneth Lloyd, now moves for summary judgment on plaintiff's three remaining claims: (1) a federal claim under 42 U.S.C. § 1983 for the use of excessive force, (2) a state law claim under California's Bane Act, and (3) a state law claim for battery. (ECF No. 69.) For the reasons below, the court recommends granting defendant's motion in full.

/////

/////

/////

1

**I.   BACKGROUND**

Eric A. Alston, Jr. was arrested by the Sacramento Sheriff's Department on November 21, 2017 on charges of felony spousal abuse. (ECF No. 72 at 10 ¶ 1.) He was held overnight at the Sacramento Main Jail and released on November 22, 2017. Id. ¶ 2. The charges against him were eventually dropped. Id. at 11 ¶ 2.

At the time of his arrest, Alston was wearing a walking boot on his right foot due to a prior ankle surgery. Id. ¶ 3. Despite the boot, Alston was able to walk down the stairs of his apartment and to the arresting officer's vehicle without assistance. Id. ¶ 4. While entering the arresting officer's vehicle, Alston fell. See id. ¶ 5. The arresting officer transported Alston to Kaiser South Hospital to be medically cleared before booking. Id. at 12 ¶ 6. Alston was evaluated for complaints of pain in his right hand and right knee. Id. ¶ 7. X-rays of his right hand and knee showed no acute fracture or dislocation. Id. ¶¶ 8-9. Alston was cleared for incarceration, according to defendant, and he was transported to the Sacramento County Main Jail. Id. ¶ 10.

Upon arriving at the Sacramento County Main Jail, the deputies attempted to transfer Alston from the garage to the arrest report room. (ECF No. 69-3 at 50.) Deputy Lloyd was working as a booking deputy that evening, and he was asked to bring a wheelchair out to the garage and assist the arresting officers with moving Alston, who was approximately six-feet tall and weighed roughly 300 pounds. (ECF No. 72 at 14 ¶ 14.) When the deputies attempted to transfer Alston, however, Alston "deliberately" slid out of the wheelchair, according to Deputy Lloyd and Sergeant Milligan. Id. Sergeant Milligan, who had been informed that Alston was being uncooperative and came to witness the booking, ordered the deputies to return Alston to the wheelchair and to tilt the chair back, to prevent Alston from intentionally sliding onto the floor again, and roll it to the arrest report room. (ECF No. 69-3 at 50.)

Alston was wheeled backwards in the wheelchair into the building and parked near the entrance of the medical screening room to wait his turn to be medically cleared for custody. (ECF No. 72 at 17 ¶ 20.) In accordance with the Sheriff's Department policy, Alston remained in handcuffs until it was his turn to be medically screened. Id. at 18 ¶ 22. When it was Alston's

turn to be screened, Deputy Trummel and Deputy Lloyd prepared to transport Alston via wheelchair into the medical screening room. Id. at 19 ¶ 25. What happened next between Deputy Lloyd and Alston is the core of the current dispute.

In his operative complaint, Alston provides the following version of events:

> They bring me a Wheelchair, take me into the booking area and without provocation Defendant Lloyd choke slams me out my wheelchair while I'm handcuffed to the ground . . . and I ask him why did he do that while I'm on the ground, than [sic] I look at Defendant Milligan and ask him what that was for, but he doesn't answer back, and at this point I inform officials that I need my knee brace and I'm hurt multiple times moreover multiple deputies are there but do not intervene . . . .

(ECF No. 1 ¶ 27.) Alston claims that Lloyd's conduct amounted to a use of excessive force and a battery.

Deputy Lloyd denies that he touched Alston's neck and claims that he merely lifted Alston's right leg up by his pant leg while Alston was still seated, because Alston's walking boot was obstructing the wheelchair's movement. (ECF No. 69-3 at 95 ¶ 16.) He contends that Alston deliberately slid out of the chair and onto the ground when he lifted Alston's leg. Id.

The incident in question was captured by security cameras in the area, which Lloyd has submitted with his motion for summary judgment. Lloyd alleges that the video footage conclusively disproves Alston's version of events.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

1  essential to that party's case, and on which that party will bear the burden of proof at trial. See
2  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an
3  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
4  Id.
5       If the moving party meets its initial responsibility, the burden then shifts to the nonmoving
6  party to establish that a genuine issue of material fact exists.  See Matsushita Elec. Indus. Co. v.
7  Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of a
8  genuine factual dispute, the nonmoving party may not rely upon the allegations or denials of his
9  pleadings but is required to tender evidence of specific facts in the form of affidavits, or
10 admissible discovery materials, in support of his contention that the dispute exists, or show that
11 the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed. R.
12 Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The nonmoving party must demonstrate that the
13 fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
14 governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
15 Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
16 genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
17 party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).
18      In the endeavor to establish the existence of a factual dispute, the nonmoving party need
19 not establish a material issue of fact conclusively.  It is sufficient that "the claimed factual dispute
20 be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."
21 T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the
22 pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
23 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
24 amendments).
25      In resolving the summary judgment motion, the evidence of the nonmoving party is to be
26 believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the
27 facts placed before the court must be drawn in favor of the nonmoving party.  See Matsushita,
28 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the nonmoving

party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## III.     DISCUSSION

Defendant Lloyd moves for summary judgment on the three causes of action asserted against him: (1) a claim under section 1983 for using excessive force in violation of the Fourth Amendment; (2) a claim under California's Bane Act for using excessive force in violation of the California Constitution Art. 1, 7, 13, and the California Civil Code section 43; and (3) a civil battery claim under California common law. (ECF No. 69.) Defendant argues that there is no genuine issue of material fact as to whether Deputy Lloyd used excessive force, and that he is entitled to qualified immunity in any event. The court will discuss each of plaintiff's causes of action in turn.

### A.     Alston's section 1983 claim against Lloyd

The Civil Rights Act provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Thus, to prevail on a valid claim under section 1983, a plaintiff must prove that the conduct complained of was committed by a person acting under color of state law, and that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–95 (1978). The parties do not dispute that deputy Lloyd was acting under color of state law when allegedly used excessive force against Alston. The disputed question is whether Lloyd deprived plaintiff of his constitutional rights.

////

Alston alleges that Lloyd violated his Fourth Amendment rights by using excessive force while booking him at the Sacramento County Main Jail.[1]  (ECF No. 1.)  A claim that a law enforcement officer used excessive force during an arrest is analyzed under the Fourth Amendment's objective reasonableness standard.  Graham v. Connor, 490 U.S. 386, 395 (1989); Tennessee v. Garner, 471 U.S. 1, 7–8 (1985).  Under this standard, "[t]he force which [i]s applied must be balanced against the need for that force."  Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997); see Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir. 2003).  Thus, considering the facts and circumstances surrounding a law enforcement officer's actions, courts "must balance the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010); see also Scott v. Harris, 550 U.S. 372, 383–84, (2007); Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002); Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir. 2001).  "Force is excessive when it is greater than is reasonable under the circumstances."  Santos, 287 F.3d at 854.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.  Accordingly,

> [a]lthough it is undoubtedly true that police officers are often forced to make split-second judgments, and that therefore not every push or shove, even if it may seem unnecessary in the peace of a judge's

---

[1] Although defendant's motion for summary judgment briefs Alston's excessive force claim under both a Fourth and Fourteenth Amendment analysis, Alston's operative complaint and his opposition to defendant's motion for summary judgment both refer to the excessive force claim in the context of the Fourth Amendment only.  "Although the Supreme Court has not expressly decided whether the Fourth Amendment's prohibition on unreasonable searches and seizures continues to protect individuals during pretrial detention, id., we have determined that the Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention."  Gibson v. County of Washoe, Nevada, 290 F.3d 1175,  (9th Cir. 2002) (citing Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir.1996), cert. denied, 519 U.S. 1006 (1996)), overruled on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016 (en banc).  This legal framework has been applied to allegations of excessive force that occur during booking at a county jail.  See Fuller v. County of Orange, 276 Fed. Appx. 675 (9th Cir. 2008) (reviewing grant of summary judgment for jail officials alleged to have used excessive force during booking under the reasonableness standard of the Fourth Amendment).  Moreover, considering the Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. 389 (2015), "the court will apply the same objective reasonableness standard here regardless of whether plaintiffs' claim arises under the Fourth or Fourteenth Amendment."  Robinson v. Cty. of Shasta, 384 F. Supp. 3d 1137, 1149 (E.D. Cal. 2019).  Thus, the court treats the excessive force claim as arising under the Fourth Amendment.

> chambers is a violation of the Fourth Amendment, it is equally true that even where some force is justified, the amount actually used may be excessive.

Santos, 287 F.3d at 853.

In the summary judgment context, the Ninth Circuit has provided the following admonition in excessive force cases:

> Under the Fourth Amendment, law enforcement may use 'objectively reasonable' force to carry out such seizures; as in the unlawful arrest analysis, this objective reasonableness is determined by an assessment of the totality of the circumstances . . . . Because this inquiry is inherently fact specific, the 'determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases.'

Green v. City & County of San Francisco, 751 F.3d 1039, 1049 (9th Cir. 2014) (citations omitted). Considering the totality of the circumstances and balancing the nature and quality of the intrusion against the governmental interests at stake, the court finds that this case is one of those rare cases.

        1.      Nature and Quality of the Intrusion

The court begins by analyzing the type and amount of force used against Alston. Bryan, 630 F.3d at 824. The parties describe the type and amount of force differently. In the operative complaint, Alston alleges that "without provocation [Deputy] Lloyd choke slam[med] [him] out of [his] wheelchair . . . ." (ECF No. 1 ¶ 27.) But during his deposition, Alston retreated from this language and hesitated to characterize the force as a "choke slam":

**Q.** According to your complaint, in your words, you state at paragraph 27 that, quote, "They bring me a wheelchair, take me into the booking area, and without provocation, defendant Lloyd choke-slams me out my wheelchair, while I'm handcuffed, onto the ground," end quote.

**A.** Correct.

**Q.** As you sit here today, do you have a recollection of defendant Deputy Lloyd choke-slamming you to the ground out of the wheelchair?

**A.** I recall sitting there looking straight ahead and me going down to the ground. I felt contact with the right side of my neck, as I'm going down, from Deputy Lloyd. So it felt

1  like something was on my right neck -- right area of my neck as I was going down, as I
2  was being battered.
3  **Q.** So Deputy Lloyd choked you; is that what you're saying?
4  **A.** I'm saying that Deputy Lloyd -- I felt his person -- his body. arms, and I felt him on the
5  right side of my neck area. Right side of my neck area. I don't know if you want to call it
6  a choke-slam. I just felt his force on the right side of my -- right side of my body, and I
7  felt it on the right side of my neck. Call it a choke? I – that's what I felt because I was
8  going down from his contact.
9  (ECF No. 72 at 38.)
10 **Q.** Do you still contend that you were choked by Deputy Lloyd?
11 **A.** I contend that I was forcibly – it was force, and that it was – I felt – like I said, when I
12 was going down, I felt something on the right side of my neck. Call it a choke? I – I felt
13 contact on the right side of my neck. I was sitting there peacefully handcuffed.
14 (ECF No. 72 at 42-43.)
15    Deputy Lloyd denies that he "choke slammed" Alston and claims that he simply lifted
16 Alston's right leg to prevent the boot from blocking the wheelchair's movement. Lloyd says the
17 force used was minor and incidental to transporting Alston to the medical screening area. Deputy
18 Lloyd's declaration describes the incident as follows:

> Deputy Trummel and I were preparing to transport Mr. Alston into the medical room to be screened. I could not push the wheelchair into the medical room with Mr. Alston's feet dragging on the ground. I tried to lift his legs up, but he immediately slid to the floor, as he had done in the garage. I had wanted Mr. Alston to remain in the wheelchair, so that he could be transported to the medical room. I did not pull, push or lift Mr. Alston out of the wheelchair onto the ground; that would have been counterproductive to getting him medically cleared and booked. Again, the action of sliding to the ground was an intentional uncooperative action on the part of Mr. Alston, in my opinion. I did not choke Mr. Alston. I did not place my hands on Mr. Alston's neck. I did not apply a use of force and I did not attempt to remove Alston from the wheelchair. If I had any contact with his neck as he slid to the ground, it was purely incidental and unintended.

27 (ECF No. 69-3 at 95.)
28 ////

8

Both parties agree that Alston is not claiming any physical injuries as a result of Lloyd's contact. (ECF No. 72 at 25 ¶ 44.); Bryan v. MacPherson, 630 F.3d 805, 825 (9th Cir. 2010) (physical injuries are not necessary to make out a Fourth Amendment violation, but they are "certainly relevant in evaluating the degree of the Fourth Amendment intrusion.").

Although the nonmoving party's version of events is generally accepted as true at the summary judgment stage, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). That is the case here. The interaction between Lloyd and Alston was captured by a security recording, which Lloyd submitted as summary-judgment evidence. Alston's allegation that Lloyd "choke slammed" him, or otherwise used force on his neck, is so utterly discredited by the video recording that no reasonable jury could believe that characterization of events. The video shows Lloyd lifting Alston's right leg by grabbing Alston's loose pant leg, and Alston sliding out of the wheelchair onto the ground. Even if Lloyd's contact caused Alston to slide out of the chair, the contact cannot reasonably be described as a choke, a slam, or any other forcible contact to Lloyd's neck. Thus, Alston's version of events cannot reasonably be accepted as true.

Based on the summary-judgment evidence, the court finds that Lloyd's use of force against Alston was minimal, with a low risk of causing harm.

### 2. Governmental Interests at Stake

The second step of the excessive force analysis under the Fourth Amendment is to "evaluate the government's interest in the use of force." Glenn, 673 F.3d at 871. That interest is assessed by considering three primary factors: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Miller, 340 F.3d at 964. These factors are not exclusive, however, and the court examines the totality of the circumstances, considering other factors when appropriate. Glenn, 673 F.3d at 872.

////

The first factor is only minimally relevant here. Alston was arrested for domestic violence, which is a violent crime that would typically weigh in favor of the use of some force to carry out the arrest. See Lowry v. City of San Diego, 858 F.3d 1248, 1257 (9th Cir. 2017) (noting that inherently violent crimes tend to weigh in favor of the government). In this case, however, the use of force occurred while Alston was already handcuffed, detained, and at the police station being booked. The inherent danger that generally exists when arresting an individual suspected of a violent crime was thus mitigated by the factual circumstances of this case. Nevertheless, because Alston was arrested for violence, this factor weighs in favor of Lloyd, although it is of lesser influence given the circumstances.

The second factor is also minimally relevant here. There is no indication that Alston posed an immediate threat to the officers or others during his arrest. Thus, this factor weighs against the use of force.

The third factor, whether Alston was resisting arrest, is more relevant. Although Alston was not actively resisting arrest, the Ninth Circuit has "drawn a distinction between passive and active resistance." Bryan v. MacPherson, 630 F.3d 805, 830 (9th Cir. 2010). "Even purely passive resistance can support the use of some force, but the level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance." Id.; see also Forrester, 25 F.3d at 805 (finding that protestors' "remaining seated, refusing to move, and refusing to bear weight" despite police orders to the contrary, constituted "passive resistance").

Here, the weight of evidence in the record indicates that Alston had been passively resisting the officers by, for example, stiffening his body and deliberately sliding out of his wheelchair. (ECF No. 69-3 at 94 ¶ 7.) At the time Lloyd allegedly used excessive force, Lloyd had reason to believe Alston was deliberately making it difficult for the officers to transport him through the facility. Given the evidence that Alston was being passively uncooperative, the third factor weighs in favor of Lloyd's use of force.

The court will also consider "whether there were less intrusive means of force that might have been used before officers resorted" to the force that plaintiff claims was excessive. Lowry,

858 F.3d at 1259. In assessing alternatives, the court is mindful that "officers are not required to use the least intrusive degree of force possible." Id. Here, as discussed previously, Lloyd's use of force against Alston was minimal. It is difficult to imagine a lesser means of force that would have accomplished Lloyd's goal of moving Alston's leg to prevent Alston's boot from obstructing the wheelchair's movement. Thus, the conceivable alternatives weigh in favor of Lloyd's use of force under these circumstances.

### 3. The Balance of Interests

The final step of the excessive force inquiry requires the court to balance the gravity of the intrusion on Alston's Fourth Amendment rights against Lloyd's need for that intrusion. Here, the force used against Alston was not severe, and the intrusion on his rights was minimal. Additionally, Lloyd had a compelling interest being able to complete Alston's booking without resistance, passive or otherwise. The court concludes that Lloyd's use of force under these circumstances was objectively reasonable and did not violate Alston's Fourth Amendment rights. Deputy Lloyd is entitled to summary judgment on Alston's section 1983 claim, because there is no genuine dispute of material fact as to the existence of a constitutional violation.

### B. Alston's Bane Act claim against Lloyd

Alston also asserts a claim against Lloyd under California's Bane Act. Cal. Civil Code § 52.1 (the "Bane Act"). The relevant portion of the Bane Act authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." Sahymus v. Tulare County, 2015 WL 3466942, *6 (E.D. Cal. June 1, 2015) (citing Jones v. Kmart Corp., 17 Cal. 4th 329, 331 (1998)). To prevail on a Bane Act claim, Alston must establish not only that Lloyd violated his constitutional rights, but that Lloyd had a "specific intent" to do so. Reese v. Cty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). As discussed above, Alston has not established a violation of his constitutional rights. And even if he had, the summary-judgment record is devoid of evidence that would support a finding of Lloyd's specific intent to violate Alston's Fourth Amendment rights. Thus, Lloyd is entitled to summary judgment on Alston's Bane Act claim.

      C.      <u>Alston's Battery claim against Lloyd</u>

Finally, Alston asserts a common-law battery claim against Lloyd. To prove a battery claim under California law, a plaintiff must demonstrate that (1) the defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to the plaintiff. <u>Brown v. Ransweiler</u>, 171 Cal. App. 4th 516, 526–27 (2009). In addition, a plaintiff bringing a battery claim against a law enforcement official has the added burden of proving that the officer used unreasonable force. <u>Bowoto v. Chevron Corp.</u>, 621 F.3d 1116, 1129 (9th Cir. 2010) (citing <u>Edson v. City of Anaheim</u>, 63 Cal. App. 4th 1269 (1998)); see also <u>Saman v. Robbins</u>, 173 F.3d 1150, 1157 n. 6 (9th Cir.1999) ("A prima facie case for battery is not established under California law unless the plaintiff proves that an officer used unreasonable force against him to make a lawful arrest or detention.").

This court has already concluded that Lloyd's use of force did not violate Alston's Fourth Amendment rights. The Fourth Amendment inquiry asks whether Lloyd's use of force was objectively unreasonable. Because this court has found that, as a matter of law, no reasonable jury could conclude that Lloyd's use of force was objectively unreasonable, Alston likewise is unable to establish that Lloyd used unreasonable force against him. Lloyd is therefore entitled to summary judgment on Alston's battery claim as well.

Having found that Alston is unable to raise a genuine issue of material fact with regard to each of his three remaining claims against Lloyd, the court does not reach the question of whether Lloyd is nonetheless protected from liability under the doctrine of qualified immunity.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

    1.    Defendant's Motion for Summary Judgment (ECF No. 69) be GRANTED;

    2.    This action be DISMISSED with prejudice; and

    3.    The Clerk of Court be directed to close this case.

In light of these recommendations, IT IS ALSO HEREBY ORDERED that all pleading, discovery, and motion practice in this action are STAYED pending resolution of the findings and

recommendations.  With the exception of objections to the findings and recommendations and any non-frivolous motions for emergency relief, the court will not entertain or respond to any motions and other filings until the findings and recommendations are resolved.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 18, 2020

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

17.2420.msj