UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ANTHONY ALSTON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>Defendants. | No. 2:18-cv-2420-TLN-CKD (PS)<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Eric Anthony Alston, Jr., proceeds without counsel with civil rights and state law claims against the County of Sacramento and two sheriff's deputies. The parties' competing motions for summary judgment are before the court. (ECF Nos. 118, 123.) This matter is before the undersigned pursuant to Local Rule 302(c)(21). See 28 U.S.C. § 636(b)(1). For the reasons set forth below, defendants are entitled to summary judgment on plaintiff's remaining claims. Plaintiff's motion for summary judgment should be denied.

**BACKGROUND**

This case arises from plaintiff's arrest and overnight stay at the Sacramento County Main Jail on November 21, 2017. Plaintiff initiated this case on September 4, 2018, naming the County of Sacramento and ten individuals as defendants. (ECF No. 1.) The court originally entered judgment for the defendants on December 15, 2020. (ECF No. 79.) In a memorandum opinion dated March 7, 2023, the United States Court of Appeals for the Ninth Circuit partially reversed

1

the judgment as to the dismissal of some claims and remanded for further proceedings. (ECF No. 88.) Following remand, the court granted in part plaintiff's motion for leave to amend (ECF No. 102), and plaintiff field the operative first amended complaint ("FAC") on July 5, 2023. (ECF No. 103.)

By stipulation filed on January 29, 2024, plaintiff dismissed his claims against defendant Brandon Rivera. (ECF No. 117.) As to the remaining defendants—the County of Sacramento, Deputy E. Ball, and Deputy E. Madriago—the FAC asserts the following claims: excessive force by Ball (first cause of action); violation of California's Bane Act (second cause of action); deliberate indifference to safety - failure to protect (third cause of action); and negligence (fourth cause of action). (Id. at 6-10.)

On April 30, 2024, plaintiff filed a motion for summary judgment. (ECF No. 118.) The motion is fully briefed with defendants' opposition and plaintiff's reply. (ECF Nos. 119, 120.)

On May 31, 2024, defendants filed a motion for summary judgment. (ECF No. 123.) The motion is fully briefed with plaintiff's opposition and defendants' reply. (ECF No. 125, 126.)

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle

1  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
2  Summary judgment should be entered "after adequate time for discovery and upon motion,
3  against a party who fails to make a showing sufficient to establish the existence of an element
4  essential to that party's case, and on which that party will bear the burden of proof at trial."
5  Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the
6  nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

7  If the moving party meets its initial responsibility, the burden then shifts to the opposing
8  party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus.
9  Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence
10  of this factual dispute, the opposing party may not rely upon the allegations or denials of its
11  pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
12  admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P.
13  56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in
14  contention is material, i.e., a fact "that might affect the outcome of the suit under the governing
15  law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific
16  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,
17  "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"
18  Anderson, 447 U.S. at 248.

19  In the endeavor to establish the existence of a factual dispute, the opposing party need not
20  establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual
21  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
22  trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S.
23  253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to
24  assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at
25  587 (citation and internal quotation marks omitted).

26  "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
27  court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls
28  v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is

the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## UNDISPUTED FACTS

On November 21, 2017, Deputy Ball and Deputy Madriago were on patrol for the Sacramento Sheriff's Department when they were dispatched to a call of domestic disturbance involving Alston as the reporting party and Alston's wife, "Doe." (Defendants' Undisputed Fact ("DUF") 1.)[1] Upon arrival, the deputies observed Alston standing in the doorway of an apartment on the second floor. (DUF 2.)

Alston wore a walking boot and walked down the stairs without any assistance and without any problems. (DUF 3.) According to the Sheriff's Department report, Alston was 31 years old, 6 foot 3 inches tall, and weighed 280 pounds. (DUF 6.)

Deputy Madriago interviewed Alston who stated he changed the locks on the apartment door to prevent his wife from returning to the apartment. (DUF 5.) A physical confrontation ensued when Alston opened the busted front door and saw his wife sleeping on the couch. (Id.) Alston stated he defended himself from his wife by punching her. (Id.)

Deputy Ball interviewed Doe who stated Alston punched her in the face and body. (DUF 7.) Deputy Ball observed Doe had slight swelling on her left temple and her left hand was swollen. (Id.) Doe was approximately 5 feet 5 inches tall and weighed 160 pounds. (Id.) Doe stated she wanted to file charges against Alston for hitting her in the head. (Id.) Deputy Ball and Deputy Madriago determined probable cause existed to arrest Alston for infliction of bodily

---

[1] Several undisputed facts for the competing motions for summary judgment are taken from plaintiff's response to defendants' statement of undisputed facts. (ECF No. 125-2.) These facts are identified as "DUF" with the corresponding number.

injury upon a spouse or cohabitant. (DUF 8.)

Alston walked, handcuffed, to Deputy Ball's patrol vehicle without any problems and did not require assistance. (DUF 9.) Deputy Madriago opened the left rear door of the patrol vehicle and instructed Alston to step inside. (DUF 10.) Neither Deputy Ball nor Deputy Madriago used force against Alston when he entered the backseat of the patrol vehicle. (DUF 12, 13.) Alston stepped his right foot into the vehicle and the walking boot worn on his right foot became stuck under the interior divider of the patrol vehicle. (DUF 10.) Alston screamed and started to fall to the ground. (DUF 10.)

Alston's handcuffs were removed. (DUF 15.) He then got into the patrol car and was re-handcuffed with his hands in front. (DUF 15.) Alston sat with one leg up on the seat (ECF No. 123-3, ¶ 24), which he describes as "sitting sideways" or lengthwise. (DUF 18.) Alston was restrained with the lap band of a seatbelt but not the shoulder strap. (DUF 15 & 19.)

Alston indicated he needed medical attention. (DUF 16.) Deputy Ball activated her in-car camera ("ICC") and transported him to Kaiser Hospital in South Sacramento to be medically cleared prior to being booked at the jail. (DUF 17.) ICC video footage evidence of the transport was submitted and relied upon by both parties. The transportation took approximately 11 minutes. (DUF 20.) During the drive, Alston complained that Deputy Ball stopped too hard. (DUF 23.) When they arrived at Kaiser, Alston complained of pain in his wrist, knee, foot, and head. (DUF 30.)

The County of Sacramento Sheriff's Department General Order 6/02 I sets forth policy guidelines pertaining to the operation of sheriff's vehicles and requires employees to "operate sheriff's vehicles in a safe manner consistent with existing conditions." (DUF 36.) A County investigation into plaintiff's claims concluded that Deputy Ball and Deputy Madriago did not violate law or policy. (DUF 34, 35.)

**DISCUSSION**

**A.    Excessive Force (First Cause of Action)**

In the first cause of action, plaintiff claims Deputy Ball used unconstitutionally excessive force because plaintiff was "not…seat belted in" and Deputy Ball "continuously" braked hard on

5

purpose, causing plaintiff to "continuously" hit his head against the median in the patrol vehicle. (ECF No. 103 at ¶¶ 18, 23). Plaintiff's declaration in support of his opposition to defendants' motion similarly states the following:

> Defendant Ball begins to stop hard on purpose, due to me not being seat belted in I continually hit [my] head against the median in the patrol vehicle, I beg her to stop as I'm now dazed and loopy. She eventually stops stopping hard.

(ECF No. 125-1, ¶7.)

Claims that law enforcement officers used excessive force, either deadly or non-deadly, during an arrest, investigatory stop, or other seizure of a citizen fall under the Fourth Amendment analysis and its standard of objective reasonableness. Scott v. Harris, 550 U.S. 372, 381-83 (2007); Graham v. Connor, 490 U.S. 386, 395 (1989). The "objective reasonableness" of law enforcement officers' use of force in a particular case is determined "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 396-97 (1989). Under Graham, a court first considers the nature and quality of the alleged intrusion, and then considers the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Deorle v. Rutherford, 272 F.3d 1272, 1279-80 (9th Cir. 2001). The Graham factors are not exclusive: a court examines the totality of the circumstances and considers "whatever specific factors may be appropriate in a particular case, whether or not listed in Graham.'" Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) (quoting Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994)).

The video evidence squarely contradicts plaintiff's claim that Deputy Ball repeatedly braked hard causing him to continuously hit his head against the median. Based on the court's viewing of plaintiff's Exhibit A, plaintiff appears to be in distress at 11:24, stating his wrist is hurting. He is seen to rocking forward and back and lies down sideways at 12:25. At 12:50 and again at 14:40, plaintiff's body moves forward and he asks, "why did you stop so hard?" The rest of the drive appears uneventful. Defendants are seen unbuckling the lap band of plaintiff's

seatbelt at 22:50 and plaintiff is getting out of the car at 27:00.

Drawing all inferences in plaintiff's favor to the extent supportable by the record, it is readily apparent from the ICC video of the transport that Deputy Ball's manner of driving was not an objectively unreasonable use of force. See Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Based on the video evidence, Deputy Ball's use of the brakes while driving and transporting plaintiff to Kaiser constituted no more than a de minimis use of force insufficient to support a claim of excessive force. See Graham, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Defendants' motion for summary judgment should be granted and plaintiff's motion for summary judgment should be denied as to plaintiff's excessive force claim against Deputy Ball.

### B. Deliberate Indifference to Safety (Third Cause of Action)

The third cause of action in the FAC alleges Deputy Madriago and Deputy Ball "were indifferent to the safety of the plaintiff, in letting him fall from the patrol [car], and [in] disregard[ing] his safety by putting him in a patrol car that he could not fit in due to his walking boot so that he had to sit in an illegal manner." (ECF No. 103, ¶ 31)

A failure to protect claim under the Fourteenth Amendment includes the following elements:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

The court examines defendants' decisions and any risks associated with (1) plaintiff getting in the patrol car for transport and (2) the manner of transport. The undisputed facts show

no conditions existed that put plaintiff at substantial risk of suffering serious harm, and no intentional decisions by defendants with respect to any such conditions.

First, defendants had no reason to anticipate a substantial risk of serious harm to plaintiff based on instructing plaintiff to get in the patrol car. Neither defendant used force to place plaintiff in the car. Plaintiff argues "it is easy to predict an individual is going to fall if their hands are cuffed, and in a mobility device." (ECF No. 121 at 4.) However, the deputies observed plaintiff descend a staircase without any assistance and walk outside to the car without any assistance. Aside from being handcuffed and wearing a walking boot, plaintiff points to no other evidence that suggests defendants were or should have been aware of a substantial risk of harm based on instructing him to get into the patrol car. The undisputed facts establish, at most, a question of fact as to whether defendants failed to appreciate a minimal risk; it was not a substantial risk, and the consequences were not obvious. A reasonable officer would not have believed there was a high degree of risk involved simply because plaintiff wore a walking boot and was handcuffed. Defendants did not cause plaintiff's injuries by failing to take obvious measures to protect plaintiff in connection with plaintiff getting into the patrol car. See Daniels v. Williams, 474 U.S. 327, 330-31 (1986) ("mere lack of due care by a state official" does not "'deprive' an individual of life, liberty, or property under the Fourteenth Amendment").

Second, the manner of plaintiff's transport in the patrol car without the shoulder strap of the seat belt being used to secure him does not rise to the level of an unconstitutional failure to protect. Plaintiff argues in his motion for summary judgment that his use of a walking boot establishes he was disabled, that the patrol car was therefore an inappropriate transport vehicle, and thus that defendants were obligated to get another transport vehicle. (ECF No. 118 at 7-8; ECF No. 121 at 3.) And further, "it was unreasonable to put the [him] in the backseat after he got stuck and [had to] sit sideways due to his mobility device[.]" (ECF No. 125 at 7.)

Being transported in a motor vehicle without seatbelts, absent other facts establishing an elevated risk, generally does not rise to the level of a constitutional violation. See Rich v. Ahern, No. 18-CV-06267-EMC, 2019 WL 2744831, at *2 (N.D. Cal. July 1, 2019) (citing collected cases). Here, plaintiff was not transported without a seatbelt. Instead, it is undisputed that plaintiff

8

wore the lap band of a seat belt. Plaintiff argues the lap band did not constitute a proper restraint because he was handcuffed and wearing a walking boot. (ECF No. 118 at 7-8, 10; ECF No. 121 at 2.) He argues the lap band, or hip strap, is designed to be used by people facing straight forward and not sideways or "length wise," which was the only way he fit. (ECF No. 118 at 4, 16; ECF No. 119 at 9.)

The lack of use of a shoulder strap, in combination with plaintiff being handcuffed and wearing a walking boot, did not present a substantial risk of harm rising to the level of a constitutional violation.[2] In general, failure to secure any seatbelt at all for a handcuffed or shackled person does not present a substantial risk of harm. See, e.g., Jabbar v. Fischer, 683 F.3d 54, 56 (2nd Cir. 2012) (district court properly dismissed action by inmate in shackles in bus without seatbelts who was thrown from his seat when bus made a forceful turn); Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 906 (8th Cir. 1999) (summary judgment properly granted to municipal defendants on Fourteenth Amendment claim by pretrial detainee who was forced to ride on a steel bench in a van without a seatbelt and eventually was thrown forward and suffered paralysis; "we do not think that the… manner of transporting individuals in [patrol wagons without safety restraints] ... obviously presented a 'substantial risk of serious harm'").

On the other hand, courts have found a constitutional violation may occur when the allegations include reckless driving in addition to failure to secure a seatbelt. E.g., Rogers v. Boatright, 709 F.3d 403, 406-09 (5th Cir. 2013) (cognizable claim stated where inmate was not allowed a seatbelt and guard allegedly drove the van "recklessly, darting in and out of traffic at high speeds" and had to "break hard to avoid hitting a vehicle," which caused inmate to be thrown head-first into the side of the holding cage); Brown v. Fortner, 518 F.3d 552, 559-60 (8th Cir. 2008) (triable issues precluded summary judgment for defendants where plaintiff was shackled and unable to fasten seatbelt, and driver drove recklessly and ignored requests by inmate-passengers to slow down before one jail van slammed into another jail vehicle).

---

[2] Moreover, as discussed further below as to plaintiff's negligence claim, the defendants did not violate section 27315 of the California Vehicle Code by not securing plaintiff with a shoulder strap.

Even if not using a shoulder strap on plaintiff constituted a lack of a proper restraint, as plaintiff argues, the defendants must have acted purposefully or recklessly in addition to failing to secure the shoulder strap in order to be liable under the Fourteenth Amendment. There is no evidence to support such a conclusion here. Plaintiff being handcuffed and wearing a walking boot did not constitute circumstances presenting a substantial risk of serious harm based on restraining plaintiff only with a seatbelt's lap band. Moreover, the video evidence squarely disputes plaintiff's allegations that defendant Ball drove recklessly in a manner that caused plaintiff to continuously hit his head against the median, as he claimed. At most, the video evidence reflects one instance, or possibly two, where the patrol car slowed to a stop and plaintiff is seen to sway forward such that it is possible his head contacted the median. Defendants argue plaintiff is bending forward "in an exaggerated manner to strike the partition in front of him" at the point when traffic movement required Deputy Ball to apply the brakes. (ECF No. 119 at 5.) Whether the movement was exaggerated or strictly caused by "braking hard," the video evidence does not support plaintiff's claim that the manner of transport presented a substantial risk of harm to him.

The court rejects plaintiff's argument that defendants were required to obtain different transport because he wore a walking boot. (See ECF No. 125 at 3-7.) Plaintiff argues "[j]ailers have to transport prisoners with mobility disabilities in proper vehicles and with proper restraints so they cannot hurt themselves during any such travel." (ECF No. 118 at 8.) First, plaintiff does not proceed on any claim under the ADA in the operative FAC. (See ECF No. 103.) Second, the cases plaintiff cites are factually and legally inapposite. See Barnes v. Gorman, 536 U.S. 181, 183-84 & 189 (2002) (holding that punitive damages may not be awarded in a private cause of action brought under § 202 of the ADA in a case where the paraplegic arrestee was removed from his wheelchair, transported on a narrow bench in the rear of a van, and seriously injured after falling to the floor); St. John v. Hickey, 411 F.3d 762, 774 (6th Cir. 2005) (defendants were not entitled to qualified immunity on the claim that they violated an arrestee's Fourth Amendment rights by attempting to place him in the back seat of the police cruiser after he specifically explained that his legs would not bend on account of his muscular dystrophy, because the right of

a nonviolent arrestee to be free from unnecessary pain knowingly inflicted was clearly established); Armstrong v. Davis, 275 F.3d 849, 871 (9th Cir. 2001) (upholding system-wide injunctive relief based on district court's extensive factual findings of injuries suffered by seventeen prisoners and parolees at a variety of parole facilities and hearings).

There is no evidence under which a reasonable jury could find defendants failed to appreciate a substantial risk of harm to plaintiff in connection with his transport in the patrol car. Defendants' motion for summary judgment should be granted and plaintiff's motion for summary judgment should be denied as to plaintiff's Fourteenth Amendment failure to protect claim.

### C.  County Liability under § 1983

Plaintiff's motion for summary judgment argues the County had a "de facto policy" to "not give reasonable accommodations to disabled inmates and prisoners." (ECF No. 118 at 8.) Defendants' motion for summary judgment argues no reasonable jury could find the County of Sacramento liable under principles of Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). (ECF No. 123-1 at 21-22.)

To succeed on a Monell claim, a plaintiff must show that he suffered an individualized constitutional injury. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403-05 (1997) (Monell plaintiffs must prove a constitutional injury). Plaintiff has not done so here.

Moreover, to establish County liability under such a theory, plaintiff must put forth evidence that the alleged conduct occurred pursuant to a governmental policy or custom. See Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010) (discussing the three possible theories under which a local government is liable for an injury under § 1983), overruled on other grounds by Castro v. Cty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (*en banc*)). Plaintiff's evidence does not show any alleged deprivations occurred pursuant to a governmental policy or custom. The evidence pertaining to plaintiff is not enough to show a pattern, practice, or custom. See Meehan v. Cnty. of Loas Angeles, 856 F.2d 102, 107 (9th Cir. 1988) (holding proof of two unconstitutional incidents does not support liability under Monell). To the extent the FAC is liberally construed to include claims against the County of Sacramento under 42 U.S.C. § 1983,

plaintiff fails to raise triable issues of fact. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

### D.   Negligence

Plaintiff claims the defendants negligently transported him in an unsafe and illegal manner. (ECF No. 103, ¶ 35.) He argues they breached a duty under California Vehicle Code § 27315 to put him in proper seat restraints and to provide a different mode of transportation because he was disabled, because he had fallen, and/or because he could not sit in the seat facing straight forward. (ECF No. 118 at 17; ECF No. 121 at 5, 10.) Defendants respond that plaintiff's negligence claim fails because they breached no duty and because the claim is premised on the incorrect factual premise that he was not wearing any seatbelt. (ECF No. 119 at 9.) They also argue plaintiff chose to sit in the manner most comfortable for him, which was with one leg up on the seat. (Id. at 6.)

The elements of a negligence claim are the following: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached this duty; and (3) the defendant's breach proximately caused the plaintiff's injuries. Wiener v. Southcoast Childcare Ctrs., Inc., 32 Cal.4th 1138, 1142 (2004); Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996).

Assuming for the purpose of these motions that defendants owed plaintiff a duty of care, there is no evidence that any duty of care was breached when plaintiff was transported in the patrol car. Plaintiff provides no evidence, other than his declaration (see ECF No. 125-1 at ¶¶ 4-7), to support his argument that a person in his circumstances could not reasonably be transported in a patrol car.

Defendants did not breach a duty to plaintiff by not restraining him with the shoulder belt of the seatbelt. California's Motor Vehicle Safety Act, which is cited by plaintiff in support of his motion, provides in relevant part:

> (d)(1) A person shall not operate a motor vehicle on a highway unless that person and all passengers 16 years of age or over are properly restrained by a safety belt. [….]

////

> (2) For purposes of this section the phrase, "properly restrained by a safety belt" means that the lower (lap) portion of the belt crosses the hips or upper thighs of the occupant and the upper (shoulder) portion of the belt, if present, crosses the chest in front of the occupant.

Cal. Veh. Code § 27315(d)(1)-(2). Although plaintiff argues the defendants violated this section, the statute exempts from mandatory seatbelt use a passenger seated behind the front seat of an authorized emergency vehicle operated by a public employee, unless required by the agency employing the public employee. See id., § 27315(g); see also id., § 165 (an authorized emergency vehicle in this context includes any publicly owned vehicle operated by a peace officer).

Plaintiff also argues the defendants breached their duties by not "put[ting] the plaintiff in the safest situation possible" (ECF No. 125 at 11), but courts recognize there is a range of reasonable conduct an officer may take to avoid liability for negligence, see Brown v. Ransweiler, 171 Cal. App. 4th 516, 537-38 (2009) ("There will virtually always be a range of conduct that is reasonable."). If an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that the officer must choose the most reasonable action or the conduct least likely to cause harm in order to avoid liability for negligence. See id.

Plaintiff has not provided any evidence that his conditions or the circumstances required him to be transported by a method other than the deputies' patrol car. His mere preference and request for transport by ambulance do not make the deputies' conduct less than reasonable. Defendants' motion for summary judgment should be granted and plaintiff's motion should be denied as to the negligence claims.

### E. Bane Act

California's Tom Bane Civil Rights Act ("Bane Act") imposes liability on a person who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise" of an individual's state or federal right. Cal. Civ. Code, § 52.1(b).) A Bane Act claim requires the following: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion. Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (3rd Dist. 2015) (citing Jones v. Kmart Corp. 17 Cal.4th 329, 334 (1998)). To prevail on a Bane

Act claim, a plaintiff must establish the defendant had a "specific intent" to violate his rights. Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018).

Having failed to raise a triable issue on any underlying constitutional claim or state law claim, plaintiffs also fail to raise a triable issue under the Bane Act. See Jones,17 Cal.4th at 334; Williamson v. City of National City, 23 F.4th 1146, 1155 (9th Cir. 2022) ("California's Bane Act requires proof of an underlying… violation." (citing Reese, 888 F.3d at 1044)). Defendants are entitled to summary judgment on plaintiffs' claim under the Bane Act and plaintiff's motion for summary judgment should be denied.

## RECOMMENDATION[3]

In accordance with the above, IT IS RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment (ECF No. 118) be denied.
2. Defendants' motion for summary judgment (ECF No. 123) be granted.
3. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: December 15, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8, Alston18cv2420.msj

---

[3] Having found plaintiff is unable to raise a triable issue of material fact as to each claim against the remaining defendants, the court need not reach defendants' argument that they are protected from liability under the doctrine of qualified immunity.